(No. 26164.—)

In re Isaac K. Goodman, Attorney, Respondent.

*Opinion filed Sept. 15, 1941—Rehearing denied November 18, 1941.*

Charles Leviton, *amicus curiae.*

Isaac K. Goodman, *pro se,* (Irving Breakstone, of counsel,) for respondent.

Mr. Justice Smith delivered the opinion of the court:

Respondent, Isaac K. Goodman, was admitted to the bar of this court on October 2, 1912. On April 28, 1939, there was filed with the committee on grievances of the Chicago Bar Association a complaint by one Francis S. Kosmerl. On January 11, 1940, the committee on inquiry of the Chicago Bar Association also filed a complaint with the grievance committee. Both complaints charged respondent with unethical and unprofessional conduct as a member of the bar.

The committee, as commissioners, under rule 59 of this court, (370 Ill. 63,) after an extended hearing, filed a report in this court sustaining the charges involved in the Kosmerl complaint, and also the charges in the complaint filed by the committee on inquiry, relating to the conduct of respondent in handling a matter for Bekins Van & Storage Company, and also the charge that respondent made a false debtor's schedule when served with an execution issued on a judgment against him in favor of David Kraft.

The commissioners made a report in detail in which the evidence is set out at length. The finding of the commissioners was that respondent had been guilty of unprofessional, unethical and dishonorable conduct, denoting a lack of good moral character, and conduct which tends to bring the profession of the law and the courts of justice into disrepute and contempt. The commissioners recommended that respondent be disbarred and his name stricken from the roll of attorneys of this court. The report and findings filed in this court cover more than two hundred pages. Respondent filed exceptions to the report. The case is here upon the report of the commissioners and respondent's exceptions to said report.

The evidence in the record is so voluminous that it would be impractical to set out in this opinion more than a summary of the controlling facts. As to the Kosmerl complaint, the record shows that in 1930 Kosmerl became the owner of a mortgage securing an original indebtedness of $50,000. Thereafter, a suit was brought to foreclose that mortgage. In that case respondent did not represent Kosmerl. On May 11, 1934, the court entered a decree in which it was found and decreed that the transaction concerning the mortgage indebtedness was usurious, that there was no default in payment, and dismissed the suit. About May 15, 1934, Kosmerl consulted respondent and employed him to collect the mortgage debt. The amount due at that time was $18,892.50. Respondent, on May 23,

1934, filed a second suit to foreclose the mortgage. In that case the mortgagor filed an answer setting up the former decree in bar of the action. When this answer was filed, respondent consulted other attorneys who advised him to file a bill for review to vacate the decree in the former suit. Acting upon this advice, such a suit was filed. The suit to review and vacate the former decree was thereafter consolidated with the foreclosure suit and the two suits were heard together as one cause.

On the hearing the bill of review was sustained and the former decree vacated. A decree for foreclosure was entered in which the amount found due was $18,982.50. The decree ordered the premises sold. An appeal was perfected to the Appellate Court for the First District by the mortgagor where the decree was affirmed. A petition for leave to appeal from the judgment of the Appellate Court was denied by this court.

The premises were sold under the decree on October 19, 1936, to Kosmerl for $19,500. While Kosmerl was the purchaser at the sale, the certificate of purchase, at the direction of respondent, was issued in the name of Barney Hayden, a son-in-law of respondent. Thereafter, the certificate of purchase was assigned by Hayden to a corporation which had been organized by respondent for the purpose of holding the certificate. A deficiency decree in the amount of $2,063.40 was entered. For some reason not definitely disclosed by the record, respondent reported to Kosmerl that, in connection with the transfer of the certificate to the corporation, it would be necessary for Kosmerl to deposit the sum of $3000 in escrow with the Chicago Title and Trust Company, to be paid to Kosmerl and respondent jointly on approval of the title to the property purchased. Later, respondent withdrew the $3000 without Kosmerl's knowledge. Upon learning that the $3000 had been turned over to respondent, Kosmerl protested to the Chicago Title and Trust Company and it

stopped payment on the check which it had given to respondent. Respondent then prepared a letter which he induced Kosmerl to sign authorizing the trust company to pay the money to respondent, and this was done.

The record shows that during the course of the litigation Kosmerl paid to respondent various sums aggregating $23,223.59 as payments for services rendered in the case. Included in these payments was an item of $10,000 designated as payment for services in opposing the petition for leave to appeal in this court. Kosmerl also paid to respondent $518.01 for costs and expenses incurred in the course of the litigation. Following the denial by this court of leave to appeal from the judgment of the Appellate Court, respondent presented a statement to Kosmerl for $50,000 for fees for services rendered in the case. This statement showed that $27,500 had been paid and that there was an additional $22,500 still due from Kosmerl. Kosmerl refused to pay this additional sum and demanded that the property be deeded to him by the corporation. Respondent refused to deliver the deed or to surrender any papers connected with the title claiming an attorney's lien on all papers in his hands.

The above facts are practically undisputed. Evidence was offered on the hearing as to the value of the services rendered by respondent. Kosmerl's witnesses fixed the amount of a reasonable fee for the services rendered at $10,000, while the witnesses for respondent placed the amount of a reasonable fee for the services rendered as high as $40,000. The value of the property was also in dispute. It was valued by the witnesses all the way from $20,000 to more than $80,000. In connection with this evidence, the facts that the property actually sold for $19,500, and that there was no redemption from the sale, must be taken into consideration.

Respondent introduced in evidence his alleged time sheets which he claimed showed more than 3700 hours

spent in his office on the case, and more than 300 hours in court. There was testimony of a handwriting expert that these time sheets had been altered and changed. The commissioners, in their report, found that the time sheets were false and fraudulent. Respondent, in an effort to sustain the charges made in the statement presented to Kosmerl, insists that the property was worth $100,000, and that through the services rendered by him Kosmerl acquired title to property of that value, notwithstanding the total amount involved in the litigation was slightly more than $18,000, and the property actually sold for $19,500. Respondent also argues that Kosmerl was a licensed attorney and was cognizant of the legal problems involved in the suit. The record shows that Kosmerl was admitted to the bar, but that he had never practiced; that he had taken a course in law as a part of his preparation for the diplomatic service in which he was engaged as an interpreter for several years. He was an attorney in name, only, and had always employed attorneys to handle his legal affairs.

The complaint filed by the committee on inquiry originally involved three charges, one of which was abandoned. The first charge involved in that complaint was that respondent, in 1937, represented the Bekins Van & Storage Company in a case pending in Cook county. On July 1, 1937, respondent submitted to that company a bill for $588.79 which included an item of $127.66 alleged to have been paid out by respondent for printing an abstract of record, and $68.83 for printing a brief in a case pending in the Appellate Court. Up to December 6, 1937, Bekins Van & Storage Company had paid respondent a total of $594.50. In April, 1938, respondent claimed that the storage company still owed him some $300 and refused to surrender the files and papers in his possession until he was paid. Finally the storage company engaged attorneys and

a settlement was effected in which respondent was paid an additional $100. This made the total amount received by respondent from that company $694.50. It later developed that respondent had not paid the printing bills, the amount of which he had collected from the storage company. In May, 1939, the printing company sued the storage company on these accounts. After the complaint was filed in this case respondent paid the printing bills. Respondent's explanation is that there was a dispute with the printer as to the amount of the bills and that he took that fact into account in settling with the Bekins Van & Storage Company in April, 1938, for an additional $100, instead of $300 which he first claimed. The printer denied that there was ever any dispute about these bills. Nevertheless, the fact remains that respondent collected the amount of the bills from his client, the storage company, and converted the money to his own use, which fact was not disclosed until the storage company was sued by the printing company.

The remaining charge in the complaint of the committee on inquiry was that respondent employed David Kraft, an attorney, to write a brief in a case in the Appellate Court; that he agreed, in advance, to pay attorney Kraft $75 for writing this brief; that he thereafter refused to pay more than $15; that Kraft brought suit against respondent in the municipal court. A judgment was rendered against respondent for $50. An execution issued on that judgment. Respondent filed a debtor's schedule stating, under oath, in said schedule, among other things, that there were no debts owing to him. At that time he was claiming the additional fees from Kosmerl.

As to the payments made by Kosmerl, the record shows that a considerable portion of the payments, aggregating $27,500, were paid by Kosmerl on respondent's representation that it was necessary to use a large amount of money

to combat some mystic influences which he represented were operating in the case against the interest of Kosmerl. What these supposed influences were does not appear, except it is established that respondent attempted to lead Kosmerl to believe that the defendants in the case were trying to bribe respondent to drop the case for Kosmerl and to accept employment on behalf of the defendants. Other representations were made by respondent to Kosmerl, for the purpose of securing payments, which were equally chimerical and visionary. That Kosmerl was gullible enough to believe such representations and advanced large sums of money to respondent is only further evidence of the trust and confidence which he reposed in respondent. This is a complete answer to the argument of respondent that he was dealing with an experienced lawyer at arm's length. It shows that respondent was not unmindful of the stupidity of his client and that he used it in mulcting from Kosmerl thousands of dollars, which respondent was not entitled to. The subject matter of the litigation was an unpaid mortgage on which there was a balance due of slightly less than $19,000. The litigation involved was an ordinary foreclosure suit, and in addition thereto a bill of review to vacate the decree in a prior suit brought to foreclose the same mortgage, and which former decree had been pleaded in bar of the second suit. The record shows that when the decree in the former suit was pleaded in bar of the second suit, respondent did not know what to do. It must be said to his credit, however, that he realized his own limitations and consulted a firm of competent attorneys. They advised him that a bill should be filed to review the decree which was relied upon as a former adjudication in bar of the action. That firm not only advised respondent what to do, but they prepared the bill for review. For all the services rendered by that firm, including the preparation of the bill of complaint, they made a charge of $250, which was paid by Kosmerl.

Taking into consideration the fact that the case was appealed by the defendants to the Appellate Court where the decree was affirmed, and that a petition for leave to appeal from the judgment of the Appellate Court was filed by them in this court, and all other facts in the case relating to the services rendered by respondent, it shocks anyone's sense of propriety and decency for respondent to claim that he devoted to that litigation 5000 hours in his office and 438 hours in court, as asserted in his answer, or 3300 hours in his office and 330 hours in court, as testified to by him on the hearing, or 3745 hours as shown by his alleged time sheets. That his testimony was false and his time sheets either made or altered for the sole purpose of attempting to create evidence in defense of his conduct, is established by the record beyond any question.

The issues involved in the litigation were not complicated. Respondent's relations with Kosmerl were that of attorney and client. Kosmerl trusted him implicitly. Whether Kosmerl was the possessor of college degrees and a license to practice law is wholly beside the questions here involved. Kosmerl had never practiced law. Before he placed his confidence in respondent, in some manner he had acquired considerable property. He was an attorney in name, only. We are not impressed with the argument of respondent that because Kosmerl was educated and experienced the parties were dealing at arm's length and that respondent cannot be charged with having overreached Kosmerl in obtaining the enormous sums of money from him shown by the record. The relation of attorney and client is based upon a higher standard. An attorney has no more right to abuse the trust and confidence of a college graduate than he has to abuse the confidence of one who has not been so fortunate. In either case, their relations are fiduciary and must be so treated. The conduct of a lawyer in his dealings with a client cannot be measured by the experience, or lack of experience, which the client has

enjoyed. Respondent had already received full compensation for all services rendered by him many times over, to say nothing of his further excessive demands. He resorted to unprofessional methods, deceit and dishonest conduct in attempting to collect more.

We are not unmindful of the rule that excessive charges for services rendered are not, alone, ordinarily sufficient to warrant the disbarment of an attorney. But, where, as in this case, grossly excessive charges are accompanied by unprofessional and indefensible acts to coerce payment, and to falsely and fraudulently sustain them, and to justify and excuse the course pursued, such conduct must be regarded as demonstrating that the one guilty is wholly unfit to continue to enjoy the license of this court as an attorney. The record shows that respondent has no conception of the standards of ethics or honorable conduct of an attorney. His conduct in the Kosmerl matter, under the evidence in this case, cannot be condoned or excused. Neither can it be too strongly condemned.

The record further shows that his conduct with reference to the Bekins Van & Storage Company matter, and his improper efforts to defeat the payment of the judgment in favor of attorney Kraft by filing a false debtor's schedule in that case, is equally reprehensible and contemptuous. If the charge against him with reference to the Kraft judgment was the only thing in the record, it would not be sufficient to justify his absolute disbarment. Nevertheless, the filing of the false schedule, when taken in connection with his conduct in the other matters involved in the complaints, clearly shows that no discipline, short of his actual disbarment, would be commensurate. Such dishonesty and unethical conduct shows conclusively that respondent is wholly unfitted to be permitted to continue as a member of the bar of this court. It is demonstrated that respondent has no regard for the ordinary rules of professional honesty and integrity, and that his conduct shown

by the evidence in this case amounts to moral turpitude. Such conduct denotes a lack of good moral character and tends to bring the profession of the law, and the courts of justice, into disrepute.

The report and recommendations of the commissioners are approved. The rule is made absolute, and respondent's name is stricken from the roll of attorneys of this court.

*Respondent disbarred.*